**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF TENNESSEE**
**KNOXVILLE DIVISION**

**ANDREW GALPERN,** individually and behalf of all others similarly situated
% Dann Law
15000 Madison Avenue
Lakewood, OH 44107

Plaintiff(s),

v.

**US STAR TRUCKING, LLC**
% Latofat Sattorova, Registered Agent
314 Park View Cir.
Pigeon Forge, TN 37863

Defendant.

Civil Action No. 25-cv-00103

**CLASS ACTION COMPLAINT FOR DAMAGES**

**(Jury Demand Endorsed Hereon)**

## INTRODUCTION

1. This action arises out of the solicitation practices of Defendant, US Star Trucking, LLC ("Defendant" or "Star") that violate the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq.* ("TCPA").

2. To promote its goods and services, Defendant engages in aggressive cellular text messages to consumers with no regards for consumers' rights under the TCPA, even after customers repeatedly request Defendant to stop texting them.

3. Plaintiff brings this action on behalf of himself individually and behalf of all others similarly situated.

## JURISDICTION AND VENUE

4. Jurisdiction of this Court arises under 28 U.S.C. § 1331 and 47 U.S.C. § 227.

5. Venue is proper in this District because Defendant is headquartered in Siever

County, Tennessee which lies in this District and Defendant transacts business here.

**PARTIES**

6. Plaintiff is, and at all times relevant herein was a citizen and resident of Contra Costa County, California.

7. Plaintiff is, and at all times mentioned herein was, a "person" as defined by 47 U.S.C. § 153(39).

8. Plaintiff at all times relevant the owner/subscriber of voice over Internet Protocol (VoIP) telephone number 510-****-2639 (the "2639 number") which received the text messages as described *infra.*

9. Defendant is, and at all times mentioned herein was, a Tennessee limited liability company, licensed to do business in Tennessee, headquartered at 314 Park View Cir. Pigeon Forge, TN 37863.

10. Defendant can be served through its registered agent, Latofat Sattorova, 314 Park View Cir., Pigeon Forge, TN 37863

11. Defendant is, and at all times mentioned herein was, a "person" as defined by 47 U.S.C. § 153 (39).

**FACTUAL ALLEGATIONS**

12. Beginning in March of 2024 Plaintiff was searching for a transport company to move his vehicle from Antioch, CA to a relative's home in Bloomington, IN.

13. Plaintiff in order to obtain a quote for the transport cost visited a website which advertised this service and provided information necessary to obtain the quote and his contact information, including the 2639 number.

14. However, unlike the other companies that reached out to Plaintiff to advertise

their service or provide a quote, Defendant began an aggressive campaign of repeated text messages to Plaintiff's 2639 number.

15. On March 18, 2024 Defendant, from telephone number 865-****-7301 (the "7301 number"), texted Plaintiff with a message stating:

> Hello, this is Jacob Johnson
> from US Star Trucking . We
> are able to move your car for
> 950 USD that includes all the
> taxes, full coverage of
> insurance and door to door
> transport. Please call or text
> me back to get further
> information about the quote.
> Please respond with "YES" to
> receive future updates or
> "STOP" to opt out of
> receiving them.

See **Collective Exhibit 1** composed of the texts sent by Defendant to Plaintiff.

16. That same day Plaintiff explicitly revoked consent to be contacted by Defendant via text message by responding "STOP" as directed by the March 18, 2024 text message. This revocation was communicated in writing through the text message sent to Defendant and was clear and unequivocal. As a consequence, whatever consent Defendant had, if any, was effectively revoked pursuant to the instructions provided by Defendant.

17. Despite the clear and unequivocal revocation of consent, Defendant continued to bombard Plaintiff with an excessive number of text messages disregarding his explicit request to cease all communication.

18. Following Plaintiff's revocation of consent on March 18, 2024, Defendant sent text messages on the following occasions from the 7031 number, to which Plaintiff again repeatedly instructed "STOP". That history is as follows:

| | | |
|---|---|---|
| 7031 | March 20, 2024 | |
| 2639 | March 20, 2024 | STOP |
| 7031 | March 21, 2024 | |
| 7031 | March 22, 2024 | |
| 2639 | March 22, 2024 | STOP |
| 7031 | March 23, 2024 | |
| 2639 | March 23, 2024 | STOP |
| 7031 | March 28, 2024 | |
| 2639 | March 28, 2024 | STOP |
| 7031 | April 4, 2024 | |
| 7031 | April 5, 2024 | |
| 7031 | April 6, 2024 | |
| 7031 | April 8, 2024 | |
| 7031 | April 18, 2024 | |
| 7031 | April 20, 2024 | |
| 7031 | April 26, 2024 | |
| 7031 | May 9, 2024 | |
| 7031 | May 20, 2024 | |
| 7031 | June 28, 2024 | |
| 7031 | July 9, 2024 | |
| 7031 | September 9, 2024 | |
| 7031 | September 13, 2024 | |
| 7031 | September 16, 2024 | |
| 2639 | September 16, 2024 | STOP |
| 7031 | November 22, 2024 | |
| 7031 | April 29, 2025 | |
| 7031 | May 11, 2025 | |
| 7031 | May 13, 2025 | |

19. Additionally, Plaintiff received one text message from 659-****-1914 on May 2, 2024 which identified the sender as Ken2 Caroll from US Star Trucking LLC. *See* Exhibit 1.

20. The text messages originated from telephone numbers which upon information and belief are owned and operated by Defendant or on behalf of Defendant.

21. Defendant's text messages constitute telemarketing because they encouraged the future purchase or investment in property, goods, or services, i.e., selling Plaintiff vehicle transport services.

22. The telephone number Defendant called was assigned to a VOIP phone service which is routed to his cellular telephone and is thus a "cellular telephone." See, *Breda v. Cellco*

*P'ship*, 934 F.3d 1, 2019 U.S. App. LEXIS 24148 (1st Cir. 2019).

23. Plaintiff is a "residential subscriber" as that term is defined by 47 CFR 64.2305(d).

24. The information contained in the text message advertises Defendant's services, discounts or promotions, which Defendant sends to promote its business.

25. In enacting the TCPA, Congress intended to give consumers a choice as to how creditors and telemarketers may call them, and made specific findings that "[t]echnologies that might allow consumers to avoid receiving such calls are not universally available, are costly, are unlikely to be enforced, or place an inordinate burden on the consumer. TCPA, Pub.L. No. 102–243, § 11. Toward this end, Congress found that:

> Banning such automated or prerecorded telephone calls to the home, except when the receiving party consents to receiving the call or when such calls are necessary in an emergency situation affecting the health and safety of the consumer, is the only effective means of protecting telephone consumers from this nuisance and privacy invasion, *Id*. at §12; cited in *Martin v. Leading Edge Recovery Solutions, LLC*, 2012 WL 3292838, at *4 (N.D. Ill. Aug. 10, 2012). Congress also specifically found that:
>
> the evidence presented to the Congress indicates that automated or prerecorded calls are a nuisance and an invasion of privacy, regardless of the type of call….

*Id*. at §§ 12-13. See also, *Mims v. Arrow Fin. Servs., LLC*, 565 U.S. 368, 132 S.Ct. 740, 744 (2011). Judge Easterbrook stated it this way:

> The Telephone Consumer Protection Act (TCPA or "the Act"), **47 U.S.C. § 227**, is well known for its provisions limiting junk-fax transmissions. A less-litigated part of the Act curtails the use of automated dialers and prerecorded messages to cell phones, whose subscribers often are billed by the minute as soon as the call is answered—and routing a call to voicemail counts as answering the call. An automated call to a landline phone can be an annoyance; an automated call to a cell phone adds expense to annoyance.

*Soppet v. Enhanced Recovery Co., LLC*, 679 F.3d 637, 638 (7th Cir. 2012).

26. Under the TCPA, and pursuant to the FCC's January 2008 Declaratory Ruling, the burden is on the Defendant to demonstrate that Plaintiff provided express consent within the meaning of the statute. *See* FCC Declaratory Ruling, 23 F.C.C.R. at 565 (¶ 10).

27. Defendant sending text messages to Plaintiff's cellular telephone after having been told to stop constitutes willful and knowing violations of the TCPA.

28. The repeated and harassing nature of these communications caused Plaintiff significant emotional distress and inconvenience, disrupting his personal life and daily activities. Plaintiff's attempts to reiterate his revocation of consent were ignored by Defendant.

29. Defendant's actions demonstrate a willful and knowing disregard for Plaintiff's revocation of consent and a blatant violation of his rights under the Telephone Consumer Protection Act ("TCPA"). Defendant's failure to cease communications upon receiving notice of revocation constitutes harassment and an invasion of Plaintiff's privacy.

30. Plaintiff and the Class were damaged by the violations alleged herein. Their privacy was improperly invaded, Defendant's text messages temporarily seized and trespassed upon the use of their phones, and they were forced to divert attention away from other activities to address the unwanted text messages. The text messages were annoying and a nuisance, and wasted the time of Plaintiff and the class members. See, e.g., *Mims*, 565 U.S. at 372 (discussing congressional findings of consumer "outrage" as to prerecorded calls).

31. The TCPA provides that any "person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection may" bring a private action based on a violation of said regulations, which were promulgated to protect telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object. 47 U.S.C. § 227(c)(5).

## CLASS ACTION ALLEGATIONS

32. Apparently, Plaintiff's experience is not unique as a review of the Better Business Bureau website for Defendant has numerous similar complaints[1]. A copy of similar complaints since January of 2024 are as follows:

a. Stop the annoying harassing call from Nicholas Clark. It has been over 6 mo. since car was transported. no way in hell will you get another job from me or my recommendation due to the harassing calls.

b. Their employee Nicholas ***** continues to text me "Hi Nicholas ***** from US Star Trucking LLC here Remember to use our trustworthy auto shipping services Contact us at any time Please respond with YES to receive future updates or STOP to opt out of receiving them Thanks" business after repeated attempts to STOP contacting me. I thought this was automated service that just wasn't getting me removed but this last time I received a response of "no"

c. I am being continually harassed, day and night, by a man a named Ken *****. He is begging for my business and will not take no for an answer. I've blocked multiple numbers but he continues to contact me on behalf of US Star Trucking

d. I never utilized services with this company. I continue to receive text messages even though I have responded "STOP" multiple times.

e. They keep texting me after I have texted "STOP" to cancel multiple times. I'm almost positive this is illegal.

f. I requested a quote on January 25, 2024 to have my vehicle transported. I received the quote and decided not to accept. I told them this multiple times and requested they please stop contacting me but they told me no and continue to harass me. I just want them to stop, it's unnerving me, but they won't listen. I attached pictures of the quote and my several requests for them to stop and also their answers of no.

g. I sent an inquiry about services on or around December 8 2023. I received a text from the company and replied stop to it. Over the next several weeks they continued to text me even after I replied "STOP". I called them at one point and

---

[1] See, https://www.bbb.org/us/tn/knoxville/profile/auto-transportation/us-star-trucking-llc-0533-90035321/complaints (last visited July 3, 2025).

> told them to please remove me from their text list and someone said they would but I am still receiving the same text message over and over again.

33. **<u>The Class</u>**. Plaintiff brings this action under Fed. R. Civ. P. 23(b)(1) - (3), on behalf of similarly situated individuals and entitles (the "Class") defined as follows:

> All persons within the United States to whose telephone number Defendant (or had placed on its behalf) placed more than one text message in a 12-month period after receiving a request to stop from the cellular telephone subscriber, from four (4) years prior to the filing of the Complaint.

34. Excluded from the Class and Subclass are Defendant and any entities in which Defendant has a controlling interest; Defendant's agents and employees; any Judge and Magistrate Judge to whom this action is assigned and any member of their staffs and immediate families.

35. **Numerosity.** The Members of the Class for whose benefit this action is brought are so numerous that joinder of all members is impractical as the Class are estimated to consist of hundreds, if not thousands, of individuals. The exact number and identities of the persons who fit within the Classes are ascertainable in that Defendant and/or third parties maintain written and electronically stored data showing:

a. The time period(s) during which Defendant sent its text messages;

b. The telephone numbers to which Defendant sent its text messages;

c. The telephone numbers for which the owner revoked prior express written consent;

d. The purposes of such call or text messages; and

e. The names and addresses of Class members.

Using this information, Class members can be identified and ascertained for the purpose of providing notice and ultimate relief.

36. **Commonality and Predominance**. This action involves common questions of law and fact that predominate over any questions affecting individual Class members. These common questions are appropriate for class certification because the resolution thereof would substantially advance the disposition of this matter and each party's interests herein. These common questions include:

a. Whether Defendant (or someone acting on its behalf) sent solicitation text messages to Plaintiff and the Class members;

b. Whether Defendant (or someone acting on its behalf) obtains prior express written consent;

c. Whether Defendant adhered to requests by Plaintiff and Class members to stop sending text messages to their telephone numbers;

d. Whether Defendant violated 47 C.F.R. § 64.1200(d);

e. Whether Defendant keeps records of text recipients who revoked consent to receive texts;

f. Whether Defendant has any written policies for maintaining an internal do not call list;

g. Whether Defendant's statutory violations were willful and knowing;

h. Whether Defendant should be enjoined from engaging in such conduct in the future;

i. Whether Plaintiff and Class members were injured and suffered damages or other losses because of Defendant's actions described herein; and

j. Whether Plaintiff and Class members are entitled to damages, and the measure and amount of those damages.

37. **Typicality**. Each of the Plaintiff's claims are typical of those of other Class members. Plaintiff is a member of the Class in that Defendant sent at least one solicitation text to Plaintiff after expressly revoking his consent to be texted, in a four-year period to his telephone number, without his prior express written consent. Plaintiff's claims are typical of the claims of the members of the Class in that they arise from Defendant's uniform conduct and are based on the same legal theories as these claims. Plaintiff and all putative members of the Class have also necessarily suffered concrete harm in addition to statutory damages, as all members of the Class spent time tending to Defendant's unwanted text messages and suffered a nuisance and an invasion of their privacy.

38. **Adequacy**. Plaintiff is an adequate representative because he is a member of the Class he seeks to represent, is committed to pursuing this matter against Defendant to obtain relief for the Class, and has no conflicts of interest with the Class. Moreover, Plaintiff's attorneys are competent and experienced in litigating class actions such as this one. Plaintiff intends to vigorously prosecute this case and will fairly and adequately protect Class members' interests.

39. **Superiority.** A class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this class action. The quintessential purpose of the class action mechanism is to permit litigation against wrongdoers even when damages to an individual plaintiff may not be sufficient to justify individual litigation. Here, the damages suffered by Plaintiff and the Class are relatively modest compared to the burden and expense required to individually litigate their claims against Defendant, and thus, individual litigation to redress Defendant's wrongful conduct would be impracticable. Individual litigation by each Class member would also strain the court system. Individual litigation creates the potential for

inconsistent or contradictory judgments and increases the delay and expense to all parties and the court system. By contrast, the class action device presents far fewer management difficulties and provides the benefits of a single adjudication, economies of scale, and comprehensive supervision by a single court.

## CAUSES OF ACTION

### COUNT I
### NEGLIGENT AND/OR KNOWINGLY/WILLFUL VIOLATIONS OF THE TELEPHONE CONSUMER PROTECTION ACT
### 47 U.S.C. § 227 *et. seq.*
### (On Behalf of Plaintiff and the Class)

40. Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

41. Under 47 C.F.R. § 64.1200(a)(10) "A called party may revoke prior express consent, including prior express written consent, to receive calls or text messages made pursuant to paragraphs (a)(1) through (3) and (c)(2) of this section by using any reasonable method to clearly express a desire not to receive further calls or text messages from the caller or sender. Any revocation request made using an automated, interactive voice or key press-activated opt-out mechanism on a call; using the words "stop," "quit," "end," "revoke," "opt out," "cancel," or "unsubscribe" sent in reply to an incoming text message; or pursuant to a website or telephone number designated by the caller to process opt-out requests constitutes a reasonable means per se to revoke consent. If a called party uses any such method to revoke consent, that consent is considered definitively revoked and the caller may not send additional robocalls and robotexts…

42. Under 47 C.F.R. § 64.1200(d), "[n]o person or entity shall initiate any call for telemarketing purposes to a residential telephone subscriber unless such person or entity has

instituted procedures for maintaining a list of persons who request not to receive telemarketing calls made by or on behalf of that person or entity. The procedures instituted must meet certain minimum standards, including:

> (1) ***Written policy.*** Persons or entities making artificial or prerecorded-voice telephone calls pursuant to an exemption under paragraphs (a)(3)(ii) through (v) of this section or calls for telemarketing purposes must have a written policy, available upon demand, for maintaining a do-not-call list.
> (2) ***Training of personnel.*** Personnel engaged in making artificial or prerecorded-voice telephone calls pursuant to an exemption under paragraphs (a)(3)(ii) through (v) of this section or who are engaged in any aspect of telemarketing must be informed and trained in the existence and use of the do-not-call list.
> (3) ***Recording, disclosure of do-not-call requests.*** If a person or entity making an artificial or prerecorded-voice telephone call pursuant to an exemption under paragraphs (a)(3)(ii) through (v) of this section or any call for telemarketing purposes (or on whose behalf such a call is made) receives a request from a residential telephone subscriber not to receive calls from that person or entity, the person or entity must record the request and place the subscriber's name, if provided, and telephone number on the do-not-call list at the time the request is made. Persons or entities making such calls (or on whose behalf such calls are made) must honor a residential subscriber's do-not-call request within a reasonable time from the date such request is made. This period may not exceed ten (10) business days from the receipt of such request. If such requests are recorded or maintained by a party other than the person or entity on whose behalf the call is made, the person or entity on whose behalf the call is made will be liable for any failures to honor the do-not-call request. A person or entity making an artificial or prerecorded-voice telephone call pursuant to an exemption under paragraphs (a)(3)(ii) through (v) or any call for telemarketing purposes must obtain a consumer's prior express permission to share or forward the consumer's request not to be called to a party other than the person or entity on whose behalf a call is made or an affiliated entity.
> (6) ***Maintenance of do-not-call lists.*** A person or entity making artificial or prerecorded-voice telephone calls pursuant to an exemption under paragraphs (a)(3)(ii) through (v) of this section or any call for telemarketing purposes must maintain a record of a consumer's request not to receive further calls. A do-not-call request must be honored for 5 years from the time the request is made.

43. The requirements set forth in 47 C.F.R. § 64.1200(d), apply equally to cellular telephones pursuant to 47 C.F.R. § 64.1200(e)[2].

[2] The rules set forth in paragraph (c) and (d) of this section are applicable to any person or entity making telephone solicitations or telemarketing calls to wireless telephone numbers to the extent described in the Commission's Report and Order, CG Docket No. 02-278, FCC 03-153, "Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991.
47 C.F.R § 64.1200(e)

44. As discussed herein Plaintiff and Class members made requests to Defendant not to receive texts from Defendant having revoked consent to be sent solicitation text messages as set forth in 47 C.F.R. § 64.1200(a)(10) *supra.*

45. Defendant, as shown above, failed to honor Plaintiff's and others' revocation of consent and continued its solicitation text messages.

46. As further indicated above, Defendant has a pattern and practice of not honoring consumers revocation demands.

47. Upon information and belief, given Defendant's pattern and practices set forth herein, Defendant has not instituted procedures for maintaining a list of persons who request not to receive telemarketing calls made by or on behalf of their behalf, pursuant to 47 C.F.R. § 64.1200(d).

48. Because Plaintiff and the Class members received more than one text message in a 12-month period made by or on behalf of Defendant in violation of 47 C.F.R. § 64.1200(d), as described above, Defendant violated 47 U.S.C. § 227(c)(5).

49. Plaintiff and the Class members are also entitled to and seek injunctive relief prohibiting Defendant's illegal conduct in the future, pursuant to 47 U.S.C. § 227(c)(5)(A).

50. As a result of Defendant's negligent violations of 47 U.S.C. §§ 227 *et seq*., Plaintiff and Class Members are entitled to an award of $500.00 in statutory damages, for each and every negligent violation, pursuant to 47 U.S.C. § 227(c)(5)(B).

51. As a result of Defendant's knowing and/or willful violations of 47 U.S.C. §§ 227 *et seq*., Plaintiff and Class Members are entitled to treble damages, as provided by statute, up to $1,500.00, for each and every violation, pursuant to 47 U.S.C. § 227(c)(5)(C).

## PRAYER FOR RELIEF

**WHEREFORE** Plaintiff Andrew Galpern, individually and on behalf of the Class, demands judgment as follows:

A. An order certifying the Class and/or Subclass pursuant to Civ. R. 23(b) as defined above, appointing Plaintiff as the representatives of the Class and appointing Plaintiff's counsel as Class Counsel;

B. An order declaring that Defendant's actions, as set out above, violate the statutes referenced herein;

C. An award of injunctive and other equitable relief as necessary to protect the interests of the Class, including, *inter alia*, an order prohibiting Defendant from engaging in the wrongful and unlawful acts described herein;

D. For an entry of judgment in favor of the Plaintiff and members of the Class against Defendant for damages to be proven at trial, including all actual damages; statutory damages, treble damages, and/or punitive damages as to the herein in accordance with all applicable law;

E. For such other and further relief that the Court deems reasonable and just.

## DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury of any and all issues in this action so triable of right.

Respectfully submitted on this 3rd day of July, 2025.

/s/Brian D. Flick
Brian D. Flick (OH 0081605)
Brent S. Snyder BPR # 021700
**DannLaw**
15000 Madison Avenue
Cleveland, OH 44107
Phone: (216) 373-0539
Fax: (216) 373-0536

notices@dannlaw.com

*Attorneys for Plaintiff and the Putative Class*